UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. |
| Plaintiff | 2:17cr00534 (KM) |
| v. | **OPINION ON BAIL APPLICATION** |
| RAYMOND PETWAY, | |
| Defendant | |

**Steven C. Mannion**, United States Magistrate Judge.

Before this Court are Defendant Raymond Petway's applications for bail on his proposed terms of release and for temporary release due to concerns over his conditions of confinement, his medical conditions, and the pandemic caused by the novel corona virus disease 2019 ("COVID-19").[1] The Government has opposed both motions.[2] I have considered Mr. Petway's motions, the Government's opposition, and heard oral argument on May 8, 2020. The Bail Reform Act authorizes United States magistrate judges to "issue orders" "concerning release or detention of persons pending trial[.]"[3] For the reasons set forth herein, Mr. Petway's applications for bail and temporary release are **DENIED**.

---

[1] (ECF Docket Entry No. ("D.E.") 30, Def. Br.). Unless indicated otherwise, the Court will refer to documents by their docket entry number and the page numbers assigned by the Electronic Case Filing System.

[2] (D.E. 33, Opp'n).

[3] 28 U.S.C. § 636(a)(2); 18 U.S.C. § 3141; *United States v. Maull*, 773 F.2d 1479, 1491 (8th Cir. 1985) (magistrate judge has release and detention authority).

## I.    BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2017, Mr. Raymond Petway was indicted for 1) being a felon in possession of a 9 mm handgun and eight 9mm bullets; and 2) possession of heroin with intent to distribute.[4] He was subsequently arrested and appeared before the Honorable James B. Clark, III, U.S.M.J. for an initial appearance.[5] Judge Clark appointed counsel and Mr. Petway consented to detention without prejudice to making a bail application at a later date.[6]

On January 10, 2018, I heard and denied Mr. Petway's application for bail upon finding that he was a danger to the community and there was no condition or combination of conditions that reasonably assured the safety of other persons or the community. Mr. Petway has been detained in federal custody at the Essex County Correctional Facility (the "Essex County Facility") ever since.

Mr. Petway argues that the "circumstances that existed when" he was "detained have now substantially changed"[7] because of the COVID-19 pandemic and his medical conditions. He seeks to be released to home incarceration at his girlfriend's residence subject to Pretrial Services supervision, a third-party custodian, location monitoring, and additional conditions.

The Government opposes and continues to argue that Mr. Petway is too dangerous for release.[8] It proffers that the indictment stems from undercover surveillance by the Jersey City

---

[4] (D.E. 1, Indictment: Count One, violation of 18 U.S.C. § 922(g)(1); Count Two, violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C)).

[5] (D.E. 3, Min. Entry).

[6] *Id.*

[7] (D.E. 30, Def. Br. at 8).

[8] (D.E. 33, Opp'n).

Police Department that observed Mr. Petway standing on a corner "selling small white packets, consistent in size and shape to packets of heroin, which [he] retrieved from inside the back of his pants."[9] The Government contends that one "of the alleged buyers was stopped and recovered from his person were two glassine envelops stamped "warrior" in blue ink and containing heroin."[10] Five "glassine envelopes, each also stamped "warrior" in blue ink and containing suspected heroin" were subsequently recovered "from inside the back of" Mr. Petway's pants.[11] The police also allegedly recovered a 9mm handgun loaded with 8 bullets from Mr. Petway. Mr. Petway allegedly told "one of the officers that he was 'strapped' because he did not belong in that neighborhood and needed protection."[12]

## II.    LEGAL STANDARD

Excessive bail is prohibited by the Eighth Amendment to the United States Constitution.[13] "[T]here is a substantive liberty interest in freedom from confinement[,]" even though the Amendment does not "grant an absolute right to bail[.]"[14] Keeping with these principles, the Bail Reform Act directs the Court to order pretrial release on personal recognizance or an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] U.S. Const. Amend. VIII.

[14] *United States v. Perry*, 788 F.2d 100, 112 (3d Cir. 1986).

3

safety of any other person or the community."[15] Bail is therefore only denied "as a matter of last resort."[16]

      Bail determinations are made upon considering Congressionally prescribed factors: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the defendant; 3) the history and characteristics of the defendant; and 4) the nature of any danger the defendant might pose to the community.[17] If the judicial officer determines after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persons and the community," detention must be ordered.[18]

      Even after such a determination, however, Section (f) of the Bail Reform Act permits a detention hearing to be reopened before trial due to changed circumstances and Section (i) permits a judicial officer to allow temporary release for compelling reasons.[19] A bail hearing may be reopened, under the Bail Reform Act,

> before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the [original bail] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety or any other person and the community.[20]

This Court reviewed this principle in *United States v. Merola*, stating,

---

[15] 18 U.S.C. § 3142(b).

[16] *United States v. Provenzano*, 605 F.2d 85, 94 (3d Cir. 1979).

[17] 18 U.S.C. § 3142(g).

[18] 18 U.S.C. § 3142(e).

[19] 18 U.S.C. §§ 3142(f)(2)(B), 3142(i).

[20] 18 U.S.C. § 3142(f)(2)(B).

> Courts have interpreted this provision strictly, holding that hearings should NOT be reopened if the evidence was available at the time of the hearing. Thus, the definition of "changed circumstances." Section 3142(c)(3) of the Bail Reform Act provides that a judicial officer "may at any time amend the order to impose additional or different conditions of release." This provision should be read in conjunction with 3142(f), as it recognizes "the possibility that a changed situation or new information" may come to the attention of the Court.[21]

Thus, either party may move to modify the conditions for bail if circumstances have changed.[22]

## III.   DISCUSSION

### A.  The Seriousness of the Virus

Before turning to the parties' arguments, the Court takes judicial notice of the world-wide pandemic that is continuing to unfold and impact all of us.[23] The federal government and State of New Jersey have declared emergencies. Public health officials have attributed the pandemic to a novel corona virus spreading from person to person.[24] COVID-19 "poses a serious public health risk."[25] Symptoms for those infected can arise within two to 14 days after exposure to the virus.[26] Most people who contract COVID-19 will experience relatively mild symptoms, but the

---

[21] *United States v. Merola*, No. CRIM 08-327 SRC MAS, 2008 WL 4449624, at *2 (D.N.J. Sept. 30, 2008).

[22] *United States v. Traitz*, 807 F.2d 322, 325 (3d Cir. 1986).

[23] The Court may take judicial notice of facts in accordance with Fed.R.Evid. 201.

[24] Situation Summary, Coronavirus Disease 2019 (COVID-19), CDC (April 19, 2020) https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html

[25] *Id.*

[26] *Id.*

symptoms can be "drastically more severe in"[27] "in adults 65 years and older and people of any age with serious underlying medical problems." [28] "COVID-19 can cause serious, potentially permanent, damage to lung tissue, and can require extensive use of a ventilator."[29] It "can also place greater strain on the heart muscle and can cause damage to the immune system and kidneys." [30] "[L]ong-term consequences and the likelihood of fatality increase in those of advanced age and those with other medical conditions…."[31]

An infected person can transmit the virus to others by speaking, coughing, or sneezing respiratory droplets.[32] It is believed that the virus can live on some surfaces for up to 72 hours.[33] People can contract the disease by touching a surface contaminated with the virus and then touching their own mouth, nose, or eyes.[34]

At this time, there is no known vaccine or proven therapeutic treatments for the disease.[35] Experts recommend everyone do their part to slow the spread of the disease and protect the most vulnerable by maintaining a physical separation of at least six feet with anyone outside of your

---

[27] *Thakker v. Doll*, No. 1:20-CV-480, 2020 WL 1671563, at *3 (M.D. Pa. Mar. 31, 2020) (*How Coronavirus Spreads*, CENTERS FOR DISEASE CONTROL; Doc. 12 at 15).

[28] Situation Summary, Coronavirus Disease 2019 (COVID-19), CDC (April 19, 2020) https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html

[29] *Thakker*, 2020 WL 1671563, at *3.

[30] *Id.*

[31] *Id.*

[32] Center for Disease Control Factsheet (4/15/2020) at www.cdc.gov/coronavirus

[33] *Thakker*, 2020 WL 1671563, at *3.

[34] Center for Disease Control Factsheet (4/15/2020) at www.cdc.gov/coronavirus

[35] *United States v. Martin*, Crim. No. 19-140, 2020 WL 1274857, 2020 U.S. Dist. LEXIS 46046, at *2 (D. Md. Mar. 17, 2020); *Thakker*, 2020 WL 1671563, at *3.

household and wearing a face mask in public settings.[36] Experts have also emphasized covering coughs and sneezes and thoroughly washing hands with soap and water.[37]

### B. CDC Interim Guidance for Correctional Facilities

The Third Circuit has recognized that COVID-19 is "highly contagious [and] … poses unique risks in population-dense prison facilities."[38] Since then, the United States Centers for Disease Control and Prevention has issued interim guidance for correctional and detention facilities because such facilities face unique challenges in controlling the transmission of COVID-19 among detainees, staff, and visitors.[39] The guidance includes best practices "specifically for correctional and detention facilities."[40]

### C. Bail Section 3142(f)(2)(B)

Courts have differed when analyzing COVID-19 and changed circumstances under Section 3142(f). On the one hand, the *Clark* court found that "COVID-19 risks … would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a

---

[36] *See* Situation Summary, Coronavirus Disease 2019 (COVID-19), CDC (April 19, 2020) https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html

[37] Center for Disease Control Factsheet (4/15/2020) at www.cdc.gov/coronavirus

[38] *States v. Raia*, 954 F.3d 594, 596 (3d Cir. 2020) (district court noted that it would have granted compassionate release to non-violent 68-year old inmate with diabetes and Parkinson's Disease because of increased risk from COVID-19).

[39] Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC (last reviewed May 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

[40] *Id.*

risk of harm to any others or the community."[41] On the other hand, the *Martin* court recognized that, due to the seriousness of the pandemic, "it can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community." [42] Both courts cautioned that such a bail review still requires an individualized assessment of the Section 3142(g) factors.[43]

In *Martin*, the defendant was charged with conspiracy to distribute heroin and cocaine, for which there was a presumption of detention. The magistrate judge found "by clear and convincing evidence that due to: the nature of the case against Martin, his role in the offense, the weight of the evidence against him (including substantial intercepted wire conversations discussing the use of guns and violence and the seizure of firearms from Martin), coupled with his prior poor adjustment to community supervision, violations of probation, and commission of the charged misconduct while on court supervision, that he should be detained."[44] The district judge agreed, noting that Martin had not established that he would not be a danger if released. Location monitoring could tell the authorities where he was, but not what he was doing "and digital communications devices would make it all too easy for him to resume his involvement (directly or indirectly) in the distribution of controlled substances without detection."[45]

---

[41] *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

[42] *United States v. Martin*, Crim. No. 19-140, 2020 WL 1274857, 2020 U.S. Dist. LEXIS 46046, at *2 (D. Md. Mar. 17, 2020).

[43] *Id.* at *3.

[44] *Id.* at *1.

[45] *Id.*

In light of the danger posed, the court found that Martin's asthma, high blood pressure, and diabetes were alone insufficient to overcome the Government's proffer that the correctional facility had implemented practices sufficient to protect him from exposure to COVID-19. For those reasons, the court denied the bail application.

Here, Mr. Petway argues that the "circumstances that existed when" he was "detained have now substantially changed."[46] Mr. Petway, however, has not proffered any new information that has a material bearing on the prior finding that he poses a danger to the community. In fact, his current bail proposal differs from the one in his original hearing only in that it adds a second third party custodian. The only other change Mr. Petway has suggested is that COVID-19 would induce him to stay inside out of fear of contracting the virus. But, as with the defendant in *Martin*, Mr. Petway could still participate in the distribution of controlled substances from home, using electronic devices.

D.  Section 3142(i)

The Bail Reform Act authorizes a "judicial officer" to "permit the temporary release" of a detainee "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[47] A defendant bears the burden of demonstrating a compelling reason for temporary release.[48] A defendant's medical condition may provide a compelling reason for release.[49] Release for medical reasons has been

---

[46] (D.E. 30, Def. Br. at 8).

[47] 18 U.S.C. § 3142(i). *See United States v. Stephens*, 2020 WL 1295155, at *2 (S.D.N.Y. 2020) (citations omitted).

[48] *United States v. Jeffries*, 2011 WL 182867, *4 (E.D. Tenn. Jan. 20, 2011).

[49] *See United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009).

granted "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries."[50]

Numerous district courts have considered applications for temporary release in the wake of COVID-19's spread. These courts have uniformly stated that a generalized fear of COVID-19 is insufficient to establish a compelling reason for release.[51] "Rather, the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary under § 3142(i)."[52] There are cases in which temporary release has been denied, and others in which release has been granted.[53]

---

[50] *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020).

[51] *Clark*, 2020 WL 1446895, at *3.

[52] *Id.*

[53] *See, e.g.*, COVID-19 applications for temporary release denied, *United States v. Bonafe*, No. 19-862, 2020 WL 1467146 (S.D.N.Y. Mar. 26, 2020); *United States v. Steward*, No. 20-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); *Clark*, 2020 WL 1446895 (D. Kan. Mar. 25, 2020); *United States v. Williams*, No. 13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020); *United States v. Hamilton*, No. 19-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); and COVID-19 applications for temporary release granted, *United States v. Duncan*, No. 19-6717 (D.N.J. April 3, 2020) (Dickson, J.) (non- flight risk defendant with documented history of diabetes and high blood pressure released on $200,000 unsecured bond, home detention, and other significant restrictions); *United States v. Fellela*, Crim. No. 19-79, 2020 WL 1457877 (D. Conn. Mar. 20, 2020) (62-year-old diabetic release pending sentence after guilty plea to charges of access device fraud and aggravated identity theft, as well as sentencing for violation of the conditions of supervised release from a prior federal criminal conviction, due to "his peculiar vulnerability to harm from the COVID-19 virus" and the court's conclusion that he was not a flight risk or a danger to the community); *United States v. Perez*, 2020 WL 1329225 (S.D.N.Y. Mar. 19, 2020) (granting temporary release for 65-year old with progressive lung disease and other significant health issues); *United States v. Stephens*, Crim. No. 15-95, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (granting request for release pending hearing on violation of supervised release in the wake of newly discovered evidence that severely weakened the Government's case and due to fact that hearing was scheduled for six days later and defendant needed to confer with counsel in order to prepare); *United States v. Kennedy*, Mag. No. 18-20315, 2020 WL 1493481 (E.D. Mich. Mar. 27, 2020) (granting request for release for defendant with high blood pressure, thyroid, and blood sugar condition when facility failed to provide medications for these pre-existing conditions throughout incarceration and defendant was presently exhibiting untreated flu-like

Each application requires an individualized analysis based upon the defendant's circumstances and the original reasons for detention.[54]

Here, as noted earlier, nothing has changed with respect to the original reasons for detention. Mr. Petway has been detained since 2018 because the Court found he was a danger to the community for which there was no condition or combination of conditions that reasonably assured the safety of other persons or the community. The evidence against him is strong. He was observed by the Jersey City Police selling heroin aided by lookouts. Officers recovered heroin in packaging from an alleged buyer that matched heroin in packaging recovered from Mr. Petway. At the time of his arrest, Mr. Petway was also in possession of a loaded 9mm handgun despite having been previously convicted of felony offenses. If convicted on the present charges, Mr. Petway faces over ten years of imprisonment.[55]

Mr. Petway has previously pled guilty to the following offenses: Distribution of controlled dangerous substances near school property in 2004 and 2015; possession of controlled dangerous substances in 2007 and 2013; robbery in 2009; resisting arrest in 2013; manufacture of controlled dangerous substances in 2015; and wandering to obtain controlled dangerous substances in 2017. He has been charged with violating probation several times and had bench warrants issued for his failure to appear in court. Mr. Petway has a pending warrant for his arrest in New York.

---

symptoms, such that he was "audibly ill with congestion"); *In re Extradition of Manique*, No. 19-71055, 2020 WL 1307109 (ND Cal. Mar. 19, 2020).

[54] *United States v. Kelly*, No. 19-4475, 2020 WL 1847668 (D.N.J., Apr. 9, 2020).

[55] (D.E. 33, Opp'n at 6).

Mr. Petway has not rebutted the presumption of danger and has not argued that he is now less dangerous then when bail was denied in 2018. Instead, Mr. Petway argues that he has specific medical conditions that compel his release in light of COVID-19. He is 36-years old and reportedly "suffers from high blood pressure[,]" "is overweight/obese[,]" and "has suffered from bacterial infections to his integumentary system[.]"[56] The Government points out that the motion is not supported by any medical evidence and that in 2017 Mr. Petway reportedly stated in his pre-trial services interview that "he is in good physical health with no medical problems reported."[57] The Court will nonetheless accept Mr. Petway's proffered medical condition for purposes of this application.

Mr. Petway argues that his conditions would increase his risk of more serious symptoms if he were to contract COVID-19. He also argues that simply being in jail increases his risk of contracting COVID-19.

The latter arguments are general and speculative. Mr. Petway conceded in oral arguments that there is no known deviation by the Essex County Facility from the CDC's Guidance for Correctional Facilities. Further, the Government has proffered that the Facility has taken unprecedented measures to prevent the introduction or spread of the virus, including screening detainees, quarantining new detainees, reducing the traffic in and out of the facility, and cleaning the Facility.

The Government also pointed out in oral arguments that the medical care Mr. Petway would receive at the Essex County Facility is equal to or greater than any care he would receive if he were released. It is unlikely that he would be regularly monitored for symptoms by medical

---

[56] (D.E. 30, Def. Br. at 1-2).

[57] (PTS Report at 2).

12

professionals at his girlfriend's house under the proposed bail package, that he would receive regular testing, and that would he receive on-site care if he were to develop symptoms. And although potentially better medical care in jail is not a reason for detention, it is certainly not a reason for release.

Releasing Mr. Petway would also likely place his girlfriend, her mother, and the two minor age children in the home at greater risk from his drug dealing and of catching the virus. A "defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody."[58] The Court already found that Mr. Petway was both a flight risk and a danger to the community. He is a recidivist likely to violate any conditions of release. Mr. Petway has been violating the law for most of his life, and the Court has no reason to believe that he would comply with the terms of a release order any more than guidance on social distancing if released. His release would endanger those around him.

## IV.    CONCLUSION

The Court is sympathetic to Mr. Petway's concerns, but he has not presented new information that warrants reconsideration of his detention and has not established a compelling reason for temporary release. The mere existence of "COVID-19 in society and the possibility that it may spread … cannot independently justify" his temporary release,[59] especially considering the efforts undertaken by the Essex County Facility to prevent the re-introduction

---

[58] *Clark*, 2020 WL 1446895, at *6.

[59] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

and transmission of COVID-19 within the facility.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

5/11/2020 8:36:44 PM

Original: Clerk of the Court
cc: File

14